Michael A. CLAUSEN, on behalf of himself and all other persons similarly situated, Plaintiffs,

v.

BENEFICIAL FINANCE COMPANY OF BERKELEY, a corporation, and Beneficial Corporation, Defendants.

No. C–74–2642 WHO.

United States District Court, N. D. California.

July 20, 1976.

---

Robert A. Goldstein, Oakland, Cal., for plaintiffs.

Ron Lane, Berry & Berry, Oakland, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiffs, a class of borrowers,[1] allege that the defendants, Beneficial Finance Company of Berkeley and Beneficial Corporation,[2] have violated the Truth in Lending Act (the Act). 15 U.S.C. § 1601 *et seq.* and Reg. Z, 12 C.F.R. § 226.1 *et seq.* Specifically, the plaintiffs claim that the defendants have improperly failed to (1) adequately disclose the security interest taken to finance their loans, and (2) adequately set forth the existence of an acceleration clause in the event of a default on their loans.[3]

1. A class of all individuals who entered into a precomputed loan during the period from March 26, 1974, through June 30, 1974, where the loan was primarily for family, personal, or household use, and where the disclosure statement the borrower received either (1) failed to provide a clear identification of the security for the loan, or (2) did not adequately set forth the existence of an acceleration clause, was certified by order of this Court on July 9, 1975, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2. Beneficial Finance Company of Berkeley is the local loan company that actually dealt with the class members. It is a wholly-owned subsidiary of defendant Beneficial Corporation. The Court considered the propriety of Beneficial Corporation's involvement in this suit on two separate occasions. First, defendant Beneficial Corporation moved to dismiss for lack of personal jurisdiction. After a consideration of the briefs, exhibits on file, and oral argument, the Court determined that Beneficial Corporation had adequate contacts with California, through its subsidiary corporation, to sustain jurisdiction (Order filed October 14, 1975). The potential liability of Beneficial Corporation was again considered when the Court determined the appropriate form of notice to be sent to class members. Again, after extensive briefing and an evidentiary hearing, the Court determined that Beneficial Corporation had exercised sufficient control over the loans in question so that it should be subject to liability exposure for any violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, that arose from these transactions (Order filed November 26, 1975).

3. Plaintiffs also seek to raise a variety of other violations, including allegations that the disclosure forms are laid out in a confusing fashion since interrelated disclosures are not made in the same section of the document, since the due date for payments is included in the box set off for the number of monthly payments, and since a computer symbol number signifying the type of security is placed next to the amount of interest for the loan. *Allen v. Beneficial Co. of Gary, Inc.*, 531 F.2d 797 (7th Cir. 1976). However, these issues are not properly before the Court at this juncture because plaintiff failed to include them in his complaint or in his class definition in his motion to certify the class. The complaint in this action alleged that the defendants had violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, on four bases: (1) failing to set forth the cost of credit insurance as part of the finance charge, (2) failing to provide a clear identification of the security interest taken, (3) failing to provide a clear identification of the creditor-defendant, and (4)

The case is presently before the Court on plaintiffs' motion for partial summary judgment to determine liability under the Act. For the reasons hereinafter set forth, I find that the defendants have violated the Act by failing to indicate on the loan disclosure statements the type of security interest taken to finance the loans, and by failing to include on the front side of the disclosure statement a clear statement of the existence of the acceleration clause.

Defendants thus are liable on a total of eighty-eight loans to class members and to a total of one hundred twenty-eight borrowers, including the individuals who have submitted both their affidavits and disclosure forms and the individuals who have submitted affidavits without their copies of the disclosure forms.[4]

**I.**

The Act plainly requires that a creditor, making a consumer loan, must provide a description of any security interest obtained by the creditors in connection with the loan, and a clear identification of the property to which the security interest relates. 15 U.S.C. § 1639(a)(8); 12 C.F.R. § 226.8(b)(5). Where, as here, the lender utilizes a separate document for the disclosures, the lender is required to make all required disclosures on one side of the document and to furnish the customer with a copy of this disclosure instrument. 12 C.F.R. § 226.-8(a)(2).

█ The defendants issue three different types of precomputed loans: note, check,

and cash voucher. The form of the loans depends largely on whether the transaction is handled by mail or in person. The disclosure forms for the note and check-type loans are virtually identical. The note and check-type loans contain a security box in the upper right-hand corner. In this box the creditor is supposed to indicate what security interest is being taken by checking off the proper item in the box. Furniture, automobiles, or wages may be taken as security for check or note-type loans. Some security is always taken to finance the loans.

Forty-nine class members have submitted disclosure statements for note and check-type loans along with affidavits indicating that their loans were taken primarily for household and personal use. The security box on the borrower's disclosure form for each of these forty-nine note and check-type loans is blank. Clearly, the defendants have failed to make the required disclosure of the security interest taken to finance these loans and are liable to borrowers on these forty-nine loans.

In addition, twenty-nine individuals who took out check and note-type loans have submitted affidavits that their loans were taken for personal or household use. These twenty-nine borrowers have misplaced their copies of the disclosure form. However, the Court does have defendants' copies of the disclosure forms prepared for these twenty-nine loans. All of the security boxes on defendants' copies are blank.[5] In addition,

failing to properly disclose the existence of an acceleration clause. In his motion to certify the class, plaintiff narrowed the issues still further and sought certification on the common ground that defendants' had failed to give the proper disclosure of (1) the security interest taken, and (2) the existence of an acceleration clause. Having voluntarily limited the issues, plaintiffs cannot now raise the claim that the format of the disclosure forms is designed in a confusing fashion.

4. Plaintiffs have submitted to the Court fifty-one affidavits and disclosure statements from class members indicating their loans were taken for household or personal purposes. They have also submitted thirty-seven affidavits from class members indicating the personal

purposes behind the loans, but without the borrower's copy of the disclosure form, the forms having been misplaced. In total the Court has received affidavits concerning eighty-eight loans. Several of these loans were issued to joint obligors. A total of one hundred twenty-eight borrowers are involved.

5. Although the Court indicated at the May 8, 1976, hearing on plaintiffs' motion for partial summary judgment that defendants' copy of the disclosure form used for one of these twenty-nine loans did indicate that household goods were taken as security and that, therefore, only twenty-eight of the individuals who had submitted affidavits without disclosure forms for note and check-type loans were entitled to recovery, defendants have clarified the situation

some of defendants' personnel have testified at their depositions that it was not their practice to mark the security box on either the borrower's copy or defendants' copy of the disclosure form. In light of the complete absence of a designation of a security interest on defendants' copies and defendants' own admission on procedures followed, it is more than reasonable to conclude that defendants also failed to adequately indicate the security interest taken for the loans made to these class members. Defendants are liable to the borrowers on these twenty-nine check and note-type loans.

In addition to check and note-type loans, the defendants utilized a check voucher-type loan. Although household goods are taken as security for cash voucher-type loans, the disclosure forms do not have a box set aside for a designation of the security interest taken. Two cash voucher-type loan recipients have returned their disclosure forms and affidavits. These disclosure forms do not indicate what security interest was taken to finance the loans. Defendants are liable to these cash voucher loan recipients.

Finally, eight cash voucher-type loan recipients have submitted their affidavits, but have been unable to locate their disclosure forms. As with the missing disclosure forms for the check and note-type loans, the Court has had the opportunity to examine defendants' copies of the documents prepared for these eight transactions. Defendants' copies fail to indicate what security interest was taken. Defendants are also liable to these borrowers on these eight cash voucher-type loans.

## II.

Each of the three types of precomputed loans (note, check, and cash voucher) contains an acceleration clause on the reverse side of the disclosure statement. The acceleration clause provides that:

and admitted that the designation of household goods was marked on defendants' copy of the disclosure form during the course of this litigation and was not on the disclosure form at the time the loan was transacted. This being the

" * * * [A] default in the payment of the full amount of any instalment thereon, at the option of the holder and upon giving notice to the Borrowers, shall render the entire unpaid balance of the Principal Amount of the Loan and accrued charges thereon at once due and payable or, without declaring such entire amount due and payable, the Lender may initiate legal proceedings for the purpose of recovering the amount of past due instalments * * *."

Plaintiffs contend that by failing to include this acceleration clause on the front side of the disclosure statements the defendants have failed to comply with 15 U.S.C. § 1639(a)(7) and 12 C.F.R. § 226.-8(b)(4), which require the creditor to disclose on the front side of a separate disclosure statement: "The default, delinquency, or similar charges payable in the event of late payments". It is undisputed that it is the defendants' policy (as indicated on the disclosure form) to rebate to the borrower the unearned portions of the finance charges if the payments are in fact accelerated.

There is a split in legal authority on the question of whether an acceleration clause that provides for the rebate of unearned finance fees, and, therefore, does not result in an additional payment sum by the borrower, must be disclosed as a charge pursuant to 12 C.F.R. § 226.8(b)(4) and 15 U.S.C. § 1639(a)(7). The Act does not define the term "charge", nor does it specifically require the disclosure of an acceleration clause. Some courts have defined the term "charge" broadly as a pecuniary expense or burden and have required disclosure of the acceleration, whether or not unearned finance charges are rebated, since an acceleration does result in an unexpected burden to the borrower if solely in terms of revised timing for repayment of the loan. *Woods v. Beneficial Finance Co. of Eugene*, 395

case, the inference is clear that the twenty-ninth borrower was also given a disclosure form without a designation of the security interest taken.

F.Supp. 9 (D.Or.1975); *Meyers v. Clearview Dodge Sales, Inc.*, 384 F.Supp. 722 (E.D.La. 1974); *Garza V. Chicago Health Clubs, Inc.*, 347 F.Supp. 955 (N.D.Ill.1972); *Burley v. Bastrap Loan Co., Inc.*, 407 F.Supp. 773 (W.D.La.1976).

Other courts and the Federal Reserve Board have taken a more narrow view of the term "charge". These legal authorities have defined the term in the commercial context and have held that when unearned finance charges are refunded upon acceleration there is no delinquency "charge" since there is no additional fee paid by the borrower. These authorities have not required disclosure of the acceleration clause where only the unpaid principal is collected upon acceleration. *Johnson v. McCracken-Sturman Ford, Inc.*, 527 F.2d 259 (3d Cir. 1975); Federal Reserve Board Staff Opinion Letter No. 851, 4 CCH Consumer Credit Guide ¶ 31,173 (Oct. 22, 1974).

Most recently, in *LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976), the Ninth Circuit held that a borrower was entitled to rescind a credit transaction because the lender had failed to make the required disclosures under the Act. The creditor's failure to disclose in the consumer's disclosure statement the existence of an acceleration clause was one of the deficiencies enumerated by the court. Thus, within this circuit, the existence of an acceleration clause is a required disclosure under the Act. Indeed, this is in keeping with the liberal construction that has traditionally been given to the Act in order to effectuate the policy of the informed use of credit. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The defendants, having failed to disclose the existence of the acceleration clause on the front side of the disclosure statement along with all the other required disclosures under the Act, are liable to the class members.

### III.

We come now to the matter of computing the damages to be awarded the class members entitled to recovery on the eighty-eight loans where inadequate disclosures

were made. This determination presents relatively new legal issues concerning the number of borrowers per loan entitled to recovery and the amount of their recovery. Although affidavits stating that loans were obtained for personal or household use were received concerning eighty-eight loans, many of these loans were issued to multiple borrowers. The actual number of borrowers involved was one hundred twenty-eight. Defendants rely on several cases awarding only one recovery per loan for violations of the Act. *Burrell v. City Dodge, Inc.*, 5 CCH Consumer Credit Guide ¶ 98,764 (N.D.Ga. 1974); *Rivers v. Century Finance Co.*, 5 CCH Consumer Credit Guide ¶ 98,771 (N.D. Ga.1974). However, I find the circuit court opinions dealing with this question to be more persuasive. *Allen v. Beneficial Finance Co. of Gary*, 531 F.2d 797 (7th Cir. 1976); *Mirabel v. General Motors Acceptance Corp.*, 537 F.2d 871 (7th Cir. 1976). As the Seventh Circuit explains, awarding recovery to each obligor on a particular loan is more in keeping with the explicit language of the Act which provides that *any* creditor who fails to comply with the requirements of the Act "with respect to *any* *person* is liable to *such person*." 15 U.S.C. § 1640(a) (emphasis added). Moreover, the added burden to the creditors of individual recoveries for each obligor on the loan is justified since a creditor would be able to pursue either of the signatories on a loan in the event of a default and thereby gain additional security. Thus, I find that each of the one hundred twenty-eight obligors on the loans made without the full and required disclosure is entitled to recover an individual award.

15 U.S.C. § 1640 establishes guidelines for the measure of damages to be awarded in individual and class actions in addition to actual damages proven. For individual actions the award is to be twice the amount of the finance charge except that no award shall be less than $100 or greater than $1,000. 15 U.S.C. § 1640(a)(2)(A). Class action recovery is not specifically dictated by the twice-the-finance charge formula. Rather, a maximum class recovery is desig-

nated of $100,000 or one percent of the net worth of the creditor, whichever is less. There is no minimum recovery established for class members. 15 U.S.C. § 1640(a)(2)(B). In determining the proper class award, the Court is directed to consider among other relevant factors, the amount of actual damages suffered, the frequency and persistency of the failures to comply with the law. The resources of the creditors, the number of persons adversely affected, and the extent to which a failure to comply was intentional.

Cases dealing with the problem of recovery in class actions under the Truth in Lending Law are sparse indeed. In *Eovaldi v. First National Bank of Chicago*, 71 F.R.D. 334 (N.D.Ill.1976), the only known case dealing with the problem of class action recovery under the Act, Judge McMillan awarded class damages of $127,000, based on a stipulated estimate that $27,000 were the actual damages suffered, and he determined the statutory maximum of $100,000 was an appropriate award to deter future violations of the Act.

In the case at bar, however, we have no stipulation as to actual damages suffered. Making this determination in a Truth in Lending case, where the violations are quite technical, is exceedingly difficult. Plaintiffs, having had the opportunity to submit affidavits on actual damages suffered, have failed to establish those damages with any reasonable degree of certainty. In light of this inadequate showing on actual damages, I make no award of actual damages to any class member. However, I do award damages pursuant to 15 U.S.C. § 1640(a)(2)(B). Although a class action award is not limited by the formula for individual damages of an award of twice the finance charges, in this case I believe the individual formula should be looked to for guidance. I find that each of the one hundred twenty-eight borrowers in the class is entitled to recover twice the finance fees charged on his loan.

The foregoing constitutes findings of fact and conclusions of law.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants shall pay to counsel for the plaintiffs the sum of eighty thousand one hundred fifty-two dollars and fifty-eight cents ($80,152.58), such sum to be distributed among the one hundred twenty-eight (128) class members in accordance with the finance fees on their particular loans.

2. Pursuant to 15 U.S.C. § 1640(a)(3), counsel for plaintiffs is entitled to an award of attorney's fees in the amount of twenty thousand dollars ($20,000).

3. Plaintiff is awarded costs.

4. Plaintiff shall prepare, serve and file a form of judgment consistent with this opinion and order, approved by defendants, on or before August 16, 1976.