Paul CADMUS, Sr., and Goldie M. Cadmus, Plaintiffs,

v.

COMMERCIAL CREDIT PLAN, INC., a corporation of the State of Delaware, Defendant.

Civ. A. No. 75–329.

United States District Court, D. Delaware.

Sept. 28, 1977.

Gary A. Myers, Community Legal Aid Society, Inc., Dover, Del., for plaintiffs.

John E. Messick, of Tunnell & Raysor, Georgetown, Del., for defendant.

STAPLETON, District Judge.

This is an action for violation of the Truth in Lending Act (15 U.S.C. § 1601, *et seq.*) arising out of a loan transaction between plaintiffs Paul and Goldie Cadmus and defendant Commercial Credit Plan, Inc. of Georgetown, Delaware. Plaintiffs allege numerous violations of the Act and regulations issued pursuant to that Act by the Federal Reserve Board (hereinafter referred to as Regulation Z). Jurisdiction is based on 15 U.S.C. § 1640(e).[1] Plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] There is no genuine issue of material fact in the case; however, legal issues concerning both liability and damages must be resolved.

### LIABILITY

The plaintiffs allege three general types of violations of the Act and Regulation Z by the defendant. It is first claimed that the disclosure statement fails to describe adequately the type of security interest retained and the property to which it attaches. Second, it is claimed that a non-rebatable two percent service charge was not properly disclosed as a prepaid finance charge. The final claim is that the defendant's right to accelerate upon default is not disclosed as a default, delinquency or similar charge, as required when unearned finance charges are not to be rebated.

■ It is clear that any one violation is sufficient to activate the civil remedies section of the Act, and that no matter how many violations are found, there can be only one recovery. *See, e. g., Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815 (7th Cir. 1976); *Sneed v. Beneficial Finance Co. of Hawaii,* 410 F.Supp. 1135 (D.Haw. 1976). Since I find that the defendant has violated the Act and Regulation Z by inade-

quately describing the property to which the security interest attached, I need not reach the plaintiffs' second and third claims.

On October 24, 1974, the plaintiffs borrowed $1704.83 from the defendants. This loan was secured by property of the plaintiffs. The relevant section of the Loan Disclosure Statement provided:

DESCRIPTION OF SECURITY: The note evidencing this loan is: . . ..

(b) Secured by a security interest under the Uniform Commercial Code . . covering the following described property to secure payment and performance of Borrower's present and future indebtedness and obligations to Creditor:

HHG—All goods presently or hereafter located at the debtor's address shown above, including: 1 Wards ref., 1 Lowe freezer, 1 Wards washer, 1 Lowe dryer, 1 Wards TV, 1 LR suit, etc. . . .

(d) Other (describe) Bolens Tractor SR # 51911

The plaintiffs claim that this section of the Loan Disclosure Statement violates the Act and/or Regulation Z in at least three different ways. First, it is claimed that the silence as to the type of security interest retained on the tractor is a violation. Second, it is claimed that the identification of the property secured is confusing, thus constituting a violation. Third, the provision purporting to secure property acquired after the date of the loan is claimed to be misleading.

■ It may well be that more than one aspect of the "Description of Security" section of the Loan Disclosure Statement violates the Act and/or Regulation Z. However, since this Court's recent decision in *Ecenrode v. Household Finance Corporation of South Dover,* 422 F.Supp. 1327 (D.Del.

---

[1]. 15 U.S.C. § 1640(e) provides, in pertinent part:

"Any action under this section may be brought in any United States district court . . . within one year from the date of the occurrence of the violation."

This action was filed within the statutory time limitations.

[2]. Originally, the motion was for partial summary judgment, since it related to the affirmative claim only and not to a counterclaim by the defendant. Subsequent to the filing of the motion, however, the counterclaim was dismissed by stipulation of the parties. Therefore, all the issues involved in the case can be disposed of in the summary judgment motion.

1976), it is clear that the plaintiffs' third claim relating to the security interest, that involving after-acquired property, is valid, and that plaintiffs are entitled to summary judgment on that ground. In *Ecenrode,* I found that the creditor's statement that the security agreement "may cover after-acquired property" stated a claim for relief under 15 U.S.C. § 1639(a)(8) and Sections 226.8(b)(5) and 226.6(c) of Regulation Z.[3] Similarly, the statement here that the security interest includes "all goods . . . hereafter located at the debtor's address" violates the Act and Regulation Z. This statement is misleading and erroneous because under Delaware law[4], a creditor may only obtain an interest in those after-acquired goods which the debtor acquires within ten days of the secured party's giving value.[5]

The defendant contends that since the Loan Disclosure Statement states that the loan is "[s]ecured by a security interest under the Uniform Commercial Code," and that the ten day limitation is part of the Uniform Commercial Code, that the limitation is incorporated into the agreement, thereby effectively disclosing to the plaintiffs the existence of the ten day limit. I cannot agree. A passing reference to the Uniform Commercial Code does not obviate the need to inform the debtors of the ten day limitation. It would be totally at odds with the purpose of the Truth in Lending Act to allow creditors to purport to secure all after-acquired goods in their Loan Disclosure Statements, thus contradicting state law, and to avoid liability under the Act by simply referring to the Uniform Commercial Code. Such contradiction in information is not the type of meaningful disclosure

**3.** 15 U.S.C. § 1639(a)(8) provides:

"(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates."

Section 226.8(b)(5) of Regulation Z provides:

"(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will

be subject to the security interest, or if the other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired."

Section 226.6(c) of Regulation Z provides:

"(c) At the creditor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the information required by this part to be disclosed. . . ."

**4.** 6 *Del.C.* § 9–204(4)(b) provides:

"(4) No security interest attaches under an after-acquired property clause

(b) to consumer goods other than accessions (Section 9–314) when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value."

**5.** There are a number of cases in other federal courts in accord with *Ecenrode. See, Tinsman v. Moline Beneficial Finance Co., supra; Pollock v. General Finance Corp.,* 535 F.2d 295 (5th Cir. 1976); *Sneed v. Beneficial Co. of Hawaii, supra; Willis v. Town Finance Corp.,* 416 F.Supp. 10 (N.D.Ga.1976); *In re Dunne,* 407 F.Supp. 308 (D.R.I.1976); *Woods v. Beneficial Finance Co.,* 395 F.Supp. 9 (D.C.Or.1975); *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121 (S.D.Ill.1974); *Kenney v. Landis Financial Group,* 349 F.Supp. 939 (N.D.Ia. 1974).

required by the Act, and is misleading and confusing in itself. In fact, it is precisely the type of misinformation which the Act is intended to prevent.

■ In addition, the Loan Disclosure Statement is misleading in failing to indicate that a security interest would only attach to property in which the plaintiffs had an interest. The Statement merely provided that a security interest would attach to "all goods presently or hereafter located at the debtor's address." There is no indication that the plaintiffs had to own the property in order for it to be secured. This is another way in which the description of the security interest in the after-acquired goods is erroneous. *Tinsman v. Moline Beneficial Finance Co., supra.*

> As I said in *Ecenrode:*
>
> [E]rroneous statements of a creditor's rights against the debtor under state law are not the kind of 'meaningful disclosure' contemplated by Congress when it passed the Truth in Lending Act.
>
> (422 F.Supp. at 1331).

Plaintiffs' motion for summary judgment will be granted.

### DAMAGES

■ Once a violation of the Act or Regulation Z is established, 15 U.S.C. § 1640(a) provides a civil remedy. That section states:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter

with respect to any person is liable to such person in an amount equal to the sum of—

> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, . . . except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; . . ..
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

In this case, the "finance charge in connection with the transaction" was $553.09. Under Section 1640(a)(2)(A)(i), the defendant is therefore liable for the statutory maximum of $1,000, because twice the amount of the finance charge is greater than $1,000.

However, there are two plaintiffs here who are joint obligors in the loan transaction. The question therefore arises whether the defendant is liable under Section 1640(a) to each plaintiff for $1,000, or whether its liability is limited to $1,000 for the entire loan transaction. This question has been dealt with in several Federal Circuit and District Courts, with conflicting results.[6]

As noted above, Section 1640(a) provides that a creditor who fails to comply with a requirement of the Act *"with respect to any person is liable to such person"* in the amount specified. A literal reading of the

---

6. In *Allen v. Beneficial Finance Co. of Gary, Inc.,* 531 F.2d 797 (7th Cir. 1976), *cert. den.,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976), and *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871 (7th Cir. 1976), the Seventh Circuit held that under section 1640(a) each of multiple obligors was entitled to recover. The Fifth Circuit recently reached the same conclusion in *Davis v. United Companies Mortgage and Investment of Gretna, Inc.,* 551 F.2d 971 (5th Cir. 1977). *See also, Clausen v. Beneficial Finance Co. of Berkeley,* 423 F.Supp. 985 (N.D. Cal.1976).

However, in *Powers v. Sims and Levin,* 542 F.2d 1216 (4th Cir. 1976), and *Mason v. General Finance Corp. of Virginia,* 542 F.2d 1226 (4th Cir. 1976), the Fourth Circuit held that joint obligors in a single loan transaction were entitled to only one civil penalty. *See also, In re Wilson,* 411 F.Supp. 751 (S.D.Ohio 1975); *Vines v. Hodges,* 422 F.Supp. 1292 (D.C.1976). The reasoning of other cases in accord, including *Gillard v. Aetna Finance Co., Inc.,* 414 F.Supp. 737 (E.D.La.1976); *St. Marie v. Southland Mobile Homes, Inc.,* 376 F.Supp. 996 (E.D. La.1974); *Burrell v. City Dodge, Inc.,* 5 CCH Consumer Credit Guide ¶ 98,764 (N.D.Ga.1974), and *Rivers v. Century Finance Co.,* 5 CCH Consumer Credit Guide ¶ 98,771 (N.D.Ga.1974), appears to be overruled by *Davis, supra.* However, their reasoning may be helpful to this Court.

statute leads to the conclusion that if there are joint obligors, each one should be able to collect the penalty, since the creditor failed to disclose required information to each separate obligor to whom it was required to disclose such information. However, the defendant argues that by enacting Section 1640(a), Congress intended to limit the remedy to $1,000 per loan transaction.[7] I do not find this argument convincing.

Some of the courts refusing to allow multiple recoveries by joint obligors under Section 1640(a) rely upon 15 U.S.C. § 1631 and Section 226.6(e) of Regulation Z.[8] These sections provide that unless the transaction involves a security interest on the obligors' principal residence, the creditor need only provide a "statement of information" or "statement of disclosures" to one of them. From this, it is argued that only one obligor can recover in the event of a violation. However, the provision of Section 1631(b) regarding one "statement" does not obviate the need for disclosure to all obligors pursuant to Section 1631(a). As the *Allen* and *Mirabal* courts found, Section 1631(b) was merely intended to cut down on paperwork.[9] It was still intended that the creditor would make the required disclosure to all obligors, but it was contemplated that one statement would be sufficient to serve this purpose.[10] I conclude that the terms of Section 1631 do not limit the recovery provisions of Section 1640(a) to one obligor.

Other courts, including those deciding *St. Marie* and *Wilson,* have held that when the joint obligors constitute a "family unit" (as the Cadmuses do), there may be only one recovery. There is, however, nothing in the Act which limits the recovery of a "family unit". Rather, Section 1640(a) indicates that the duty of the creditor runs to each obligor in a loan transaction. This is not unreasonable. When the creditor has two people jointly liable on a note, the creditor gains additional security. The obligations of the creditor should be commensurate with this increased security. Just as both obligors are liable to the creditor, the creditor should be liable to both obligors for its violations of the Act.

The *Mirabal* court also noted several problems in the administration of the Act which would arise if only one of two or more joint obligors was entitled to recover. First, if only one obligor sued, the question of whether he or she could recover the full penalty, or how much he or she could recover, would arise. If any of the joint obligors could recover the entire penalty, questions of liability between joint obligors would arise. There would also be a question of who could sue under the Act, if only one obligor received the "statement of information". The Act provides no clues as to how any of these problems would be solved. One inference is that it was not intended

7. The legislative history of the Act does appear to lend some support to this view. *See,* 1968 *United States Code Cong. & Admin. News* p. 1962, 1976:

"Any creditor failing to disclose required information would be subject to civil suit with a penalty equal to twice the finance charge, with a minimum penalty of $100 and a maximum penalty of $1,000 on any individual credit transaction. . . ."

However, this statement was in a general discussion of the penalty section of the bill and was not directed to the issue of recovery by joint obligors.

8. 15 U.S.C. § 1631, as amended, provides:

"(a) Each creditor shall disclose clearly and conspicuously in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this part or part D of this subchapter.

(b) If there is more than one obligor, a creditor need not furnish a statement of information required under this part or part D of this subchapter to more than one of them."

Section 226.6(e) of Regulation Z provides:

"(e) *Multiple customers; disclosure to one.* In any transaction other than a transaction which may be rescinded under the provisions of § 226.9, if there is more than one customer, the creditor need furnish a statement of disclosures required by this part to only one of them. . . ."

9. *See,* 1968 *U.S.Code Cong. & Admin. News* p. 1962, 1974.

10. Regardless of how many obligors the creditor is required to make disclosures to under Section 1631, in this case, the defendant did send the disclosure statement to both plaintiffs, and failed to comply with the Act and Regulation Z with respect to both plaintiffs.

that these problems would arise because the statute allows multiple recovery by joint obligors. This inference is bolstered by the language of Section 1640(a) itself, regarding "any person". In short, I have found nothing which convinces me that when Congress said "any person", it meant anything other than "any person".

I hold that each joint obligor is entitled to recover from the creditor for violations of the Act or Regulation Z. Since twice the finance charge in this case is greater than $1,000, Mr. and Mrs. Cadmus are each entitled to recover $1,000 from the defendant for its violation, in addition to a reasonable attorney's fee, to be determined by this Court.

The parties should agree promptly on a schedule for developing the record on the attorney's fee issue.